```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                   :
WINSTON GRAVER
                                   :
     v.                            :  Civil Action No. DKC 2004-0475
                                   :
WESTAT, INC.
                                   :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion by Defendant, WESTAT, Inc., for summary judgment pursuant to Fed.R.Civ.P. 56. (Paper 35). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, Defendant's motion for summary judgment will be granted.

**I.   Background**

Plaintiff Winston Graver, proceeding *pro se*, filed a complaint against Defendant, alleging discriminatory discharge and retaliation based on his race and national origin, in violation of Title VII of the Civil Rights Acts of 1964 ("Title VII"), *as amended*, 42 U.S.C. § 2000e, *et seq*. (Paper 22, at 3-4). The following facts are undisputed, unless otherwise noted.

Defendant, headquartered in Rockville, Maryland, provides survey research to the federal government and other clients. (Paper 35, at 6). Defendant hired Plaintiff, who is Black and of Jamaican origin, in March, 2001 to work as a Clerk in the Receipt

Control Department ("RCD") of the Gaither Road office.[1]  (Paper 1, ¶¶ 1, 6).

On May 6, 2003, a staff meeting was held at which Plaintiff alleges he told his supervisor, Roseline Khetarpal, that he "was aware that shortly after [he] began working there she tried to have [him] fired on at least two occasions by telling lies on [him] and that she was doing the same thing to [his] fellow Black male co-workers."  (Paper 22, at 1; paper 35, Graver Dep., at 102).

Later that week, senior managers held a meeting with the RCD in an effort to address what they viewed as widespread problems with accurate timekeeping procedures, use of cell phones, office professionalism, appropriate use of breaks, and schedules.  (Paper 35, at 8).  Shortly after this meeting Lucy Bill was transferred from another department and assigned as supervisor of the RCD.  (*Id*.)  At this point, Ms. Bill replaced Ms. Khetarpal as Plaintiff's direct supervisor.

Ms. Bill located her desk near Plaintiff's.  On two occasions in the following week, Ms. Bill spoke to Plaintiff because she perceived him to be sitting idly or working on unassigned projects.  (Paper 35, Lucy Bill Aff., ¶¶ 11, 14).  On the second occasion, Ms. Bill decided that Plaintiff's conduct was insubordinate and that he was stealing time from Defendant.  (*Id*. at ¶ 17).  She decided to

---

[1]  Defendant alleges that Plaintiff was hired on March 11, 2002. (Paper 35, at 6).  This factual discrepancy is not material.

terminate Plaintiff's employment.  After confirming this decision with the senior managers, Ms. Bill drafted a release letter and informed Plaintiff of her decision the following day, May 16, 2003. (*Id*. at ¶¶ 18, 19).

On February 25, 2004, Plaintiff filed suit against Defendant claiming he was terminated in violation of Title VII.  Plaintiff claims "that the decision to terminate him [was] because of his race and national origin and not for any other reason." (Paper 1, ¶ 12).  Plaintiff also asserted various state law claims.  In an Order and accompanying Memorandum Opinion issued on March 7, 2005, this court granted Defendant's motion to dismiss but gave Plaintiff leave to amend his complaint with regard to his federal discrimination claim.[2]  (Paper 20).  Plaintiff was ordered to provide "the factual grounds on which [his] discrimination claim rests and demonstrate why his Title VII claim should not be dismissed for failure to state a claim."  In compliance with the Order, Plaintiff submitted an amended complaint, in which he raised a retaliation claim for the first time. (Paper 22).  Defendant now moves for summary judgment on both the discriminatory discharge and the retaliation claims.  (Paper 35).

**II. Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material

---

[2] The state law claims were dismissed without leave to amend.

fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her

4

responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Analysis**

Title VII provides that an employer shall not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  For the first method, an employee may utilize

5

"ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Rhoads v. Fed. Deposit Ins. Co.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotation marks omitted), *cert. denied*, 535 U.S. 933 (2002).  In order to overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact."  *Id.* (internal quotation marks omitted).  More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Id.* at 391-92 (internal quotation omitted).  If such evidence is lacking, the plaintiff nevertheless may proceed under *McDonnell Douglas*.  *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tx. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the

6

defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U .S. at 255 n. 10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her."  *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

In his complaint, Plaintiff claims to have overheard his supervisor make racist remarks.[3]  (Paper 22, at 1-2).  While Plaintiff's unsworn pleadings do not constitute evidence, even if they were under oath, the remarks he overheard would not constitute direct evidence of discrimination; Plaintiff would still have to proceed under the *McDonnell Douglas* burden-shifting scheme.

> "Derogatory remarks may in some instances constitute direct evidence of discrimination." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995), *rev'd in part on other grounds*, 517 U.S. 308 (1996)).  However, all offensive language is not direct evidence of

---

[3] "I heard her telling someone on the telephone that she is a slave driver and that she was also heard telling a staff member from another department how much she crack[s] the whip to get her staff to work."  (Paper 22, at 1-2).

7

> discrimination. "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and 'unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.'" *Id.* (quoting *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir. 1991) (internal citations omitted)). In other words, there has to be a nexus between the offensive remark and Plaintiff's eventual termination for that remark to comprise direct evidence of discriminatory discharge. Plaintiff must present, "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring). The evidence must be, "of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.*

*Eruanga v. Grafton Sch., Inc.*, 181 F.Supp.2d 514, 521 (D.Md. 2002).

Because Plaintiff has not offered direct evidence of discriminatory intent on the part of Defendant, his claims will be analyzed under the *McDonnell Douglas* burden shifting scheme. Plaintiff fails to satisfy the burden of proof in two ways; he does not satisfy the *prima facie* test and, even if he could, he does not offer evidence sufficient to prove that Defendant's legitimate non-discriminatory reason for firing him was merely pretextual.

**A. Discriminatory Discharge**

Plaintiff alleges that he was discriminated against based on both his race and national origin. In order to establish a *prima facie* claim of discriminatory discharge, a plaintiff must demonstrate that

8

> (1) he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) the position was filled by a similarly qualified applicant outside the protected class.

*Frank v. England,* 313 F.Supp.2d 532, 538 (D.Md. 2004) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)).

Defendants do not distinguish between Plaintiff's separate claims for race and national origin discrimination, but merely assert that Plaintiff cannot satisfy the third or fourth elements of the *prima facie* case. The court will analyze the bases of Plaintiff's claims separately, since each fails for a different reason.

Plaintiff's discriminatory discharge claim based on race fails because he has not satisfied the fourth prong, and, therefore, has not made out a *prima facie* case of discrimination. Defendant offers evidence that Plaintiff's position was filled by a Black female shortly after he was terminated. (Paper 35, Lucy Bill Aff., ¶ 22). Plaintiff offers no evidence to the contrary. Because Plaintiff's claim is based on race, a Black female is a member of his protected class, and he cannot establish a *prima facie* case of discrimination.

Plaintiff's discriminatory discharge claim based on national origin fails because Plaintiff has not shown that, at the time he was discharged, he was performing at a level that met Defendant's

9

legitimate expectations. (Paper 35, at 14). Moreover, even if Plaintiff could establish a *prima facie* case, he has not shown that Defendant's legitimate, non-discriminatory reason for terminating him is merely pretextual. Plaintiff's supervisor, Ms. Bill, testified that on two occasions immediately preceding Plaintiff's release, she spoke to him because he was either not working, or working on something to which he was not assigned. (Paper 35, Lucy Bill Aff., ¶¶ 11, 14).

Again, Plaintiff has submitted nothing but his unsworn pleadings, which may not be used as evidence.[4] However, even if the court were to accept Plaintiff's unsworn pleadings as evidence, which could establish a *prima facie* case of discrimination, he fails to show that Defendant's proffered legitimate reason for firing him was a mere pretext for national origin discrimination. There are no allegations, anywhere in the record, that Plaintiff's supervisors knew of Plaintiff's national origin, much less discriminated against him based on it. There is no factual basis on which Plaintiff may rest his claim for national origin discrimination. Defendant is entitled to summary judgment on Plaintiff's discriminatory discharge claim.

**B.  Retaliation**

---

[4] In his unsworn pleadings, Plaintiff maintains that he was working on assigned work, but that Ms. Bill was unaware that his responsibilities differed from other members of the staff, so she did not realize that he was supposed to do that work. (Paper 37, at 4).

10

In order to survive summary judgment, Plaintiff must establish a *prima facie* case of retaliation by offering evidence from which a reasonable jury could find that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir.), *cert. denied*, 519 U.S. 818 (1996). Like cases asserting discrimination, once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to offer evidence of a legitimate, non-retaliatory reason for the adverse employment action, *see Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989), after which the burden shifts back to the plaintiff to produce evidence that the defendant's proffered reason was a pretext for retaliation. *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002).

The first question the court must answer is whether Plaintiff's interaction with Ms. Khetarpal was protected activity under Title VII. Plaintiff told Ms. Khetarpal that he overheard her making comments referencing slaves and told her "that she was not setting any good examples for her staff because of the things that she said and did and therefore her staff had no respect for her[.]" (Paper 22, at 1-2).

In the context of a retaliation claim, a "protected activity" may fall into two categories, opposition and participation. Only one of these categories - opposition - is relevant here. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)).

> To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981). Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities. *See id.* To determine whether an employee has engaged in legitimate opposition activity we employ a balancing test. *See id.* We "'balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'" *Id.* (quoting *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 231 (1st Cir. 1976)).

*Laughlin*, 149 F.3d at 259-260. Furthermore, the opposition activity must have been directed at an actual unlawful employment practice or "respond[] to an employment practice that the employee reasonably believes is unlawful. *E.E.O.C. v. Navy Fed. Credit Union,* 424 F.3d 397, 406-07 (4th Cir. 2005)." *Jordan v. Alternative Res. Corp.,* 458 F.3d 332, 338 (4th Cir. 2006). The employee's belief must be "an objectively reasonable belief in light of all

the circumstances that a Title VII violation has happened or is in progress." *Jordan*, 458 F.3d at 340-41.

It is not at all clear that Plaintiff's purported attempt to bring attention to what he viewed as discriminatory activity when he informed Ms. Khetarpal that he objected to her comments about being a slave driver and cracking a whip can satisfy the first element of the *prima facie* case. On the other hand, it is undisputed that Defendant took an adverse employment action against Plaintiff, the second element, when he was fired.

Plaintiff is unable, however, to establish causation, the third element of the *prima facie* case. "To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original).

Plaintiff claims he was terminated in retaliation for what he said to Ms. Khetarpal. (Paper 22, at 3). Ms. Bill made the decision to terminate Plaintiff's employment. (Paper 35, Lucy Bill Aff., ¶ 18). Ms. Bill testified that "during the entire period that I was Mr. Graver's supervisor, I was not aware that he had

13

allegedly or actually reported that he had been discriminated against by a Westat supervisor prior to my assignment[.]" (*Id.* ¶ 23). Plaintiff offers no evidence showing that Ms. Bill knew of his comments to Ms. Khetarpal. Because the undisputed evidence shows that the person who decided to terminate Plaintiff was unaware of his protected activity, Plaintiff has failed to establish the third element of the *prima facie* case for retaliation. The court will grant Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

## IV. Conclusion

Because Plaintiff has not offered any evidence of discrimination or retaliation, direct or circumstantial, the court will grant Defendant's motion for summary judgment. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
